UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,                :

    - against -                                    :

                                                      15-Cr-816-01 (NSR)

SALVATORE CARPANZANO,             :

    Defendant.                                     :

-------------------------------------------------------X

## DEFENDANT SALVATORE CARPANZANO'S
## MEMORANDUM IN AID OF SENTENCING

### I. INTRODUCTION

Salvatore Carpanzano respectfully submits this memorandum in anticipation of his sentencing that is scheduled for September 12, 2018. On December 9, 2015, pursuant to a plea agreement with the Government, Salvatore Carpanzano stood before this Court and pleaded guilty to Information 15 Cr 347 (NSR), which charged him with one count of conspiracy to commit wire fraud and seven counts of wire fraud. As is typical in virtually all criminal matters which are resolved through a guilty plea, the only information now before the Court with respect to Mr. Carpanzano is his admitted participation in this crime. However, there is a different side of this defendant, as well as certain other factors, which I believe will assist in Your Honor's task in determining an appropriate sentence in this matter.

A Judge's responsibility when sentencing a defendant is undoubtedly a difficult task. As this Court is surely aware, there are a variety of factors which the Court must consider in determining the appropriate sentence - not simply the offense of conviction, but the history and

characteristics of the defendant as well. For this reason, we have attached as Exhibit "A" several letters from the family and friends of Mr. Carpanzano, which provide valuable insight into who the defendant is, which we submit, should not be overshadowed by his offense conduct. These letters show a genuine concern for this man from family members and friends who have known Sal for many years.

It is not the intention of this memorandum to attempt to minimize the seriousness of the offense to which Mr. Carpanzano has pleaded guilty and for which he has accepted full responsibility. Rather, as is discussed below, there are numerous factors which should be considered before determining the appropriate sentence including sentencing factors reflected in 18 U.S.C. §3553(a).

Over his lifetime, Salvatore Carpanzano has earned a reputation for extraordinary generosity and love for his family and friends. The instant offense conduct has brought him remorse, regret and shame.

For the reasons discussed below, Salvatore Carpanzano respectfully submits that imposition of a sentence outside the guidelines is reasonable and warranted in this case, and not greater than necessary punishment under an individualized assessment of the 18 U.S.C. §3553(a) sentencing factors in his case.

## II. DISCUSSION

### A. LEGAL STANDARD

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the guideline range, as well as any basis to depart from that range. However, the Court is no longer required to impose a sentence within that range. In fact, the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 128 S.Ct. 554, 574 (2007). The guidelines are only the "starting point and initial benchmark..." *Id., citing Gall v. United States*, 128 S.Ct. 586, 596 (2007). It is the sentencing Judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the §3553(a) factors. *Id., Kimbrough*, 128 S.Ct. at 574, *citing Gall*, 128 S.Ct. at 597.

In determining a sentence that is "sufficient, but not greater than necessary," the first of those factors the Judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553 (a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing Judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those characteristics, along with the remaining seven factors[1], may render sentences that do not fit within the guidelines, yet are fair and meet the goals of sentencing set forth in §3553 (a)(2). *See United*

---

[1] The seven other factors are (1) the nature and circumstance of the offense; (2) the history and characteristics of the offender; (3) the need for the sentence imposed to reflect the objectives of sentencing set forth in §3553(a)(2); (4) the kinds of sentences available; (5) the Commission's policy statements; (6) the need to avoid unwarranted sentence disparities of similar defendants who commit similar crimes; and (7) the need to provide restitution to victims. *See* 18 U.S.C. §3553(a).

States v. Ovid, 09 CR 216, slip op. 3 (EDNY, Oct. 1, 2010).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 597. Rather, the Court must make an individualized assessment based on the facts presented. From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ." *Kimbrough*, 128 S.Ct. at 570, *citing* 18 U.S.C. §3553(a). The "not greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. §3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, 128 S.Ct. at 599; *see also Rita v. United States*, 127 S.Ct. 2456, 2465 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect §3553(a) considerations").

Thus even where the Guidelines range excludes the possibility, an individualized assessment of a particular offender and his circumstances may prove a noncustodial sentence of home confinement or probation to be an entirely appropriate punishment. For instance in *Gall*, the Supreme Court upheld a sentence of probation in a narcotics case where the Guidelines range was 30 to 37 months, holding that it was within the sentencing court's discretion after an adequate assessment of the case to order probation regardless of the Guidelines range. *Gall*, 552 U.S. at 59. The *Gall* Court counseled that viewing probation as a "100% departure" from a Guidelines range that provides for only imprisonment – and thus not as adequate punishment – is wrong, because to take this view "gives no weight to the substantial restriction of freedom involved in a term of

4

supervised release or probation." *Id.* At 48 (internal quotation marks and citation omitted).

For the reasons to be discussed, Mr. Carpanzano respectfully submits that there is "sufficiently compelling" justification in his case for a sentence outside the advisory Guideline range, *Gall*, 552 U.S. at 50, and that under an individualized assessment of the 18 U.S.C. §3553(a) factors a sentence outside the guidelines is "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

### III. MR. CARPANZANO'S HISTORY AND CHARACTERISTICS

Sentencing courts must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *United States v. Moreland*, 568 F. Supp. 2d 674, 680 (S.D.W.Va. 2008); citing 11 *Gall*, 552 U.S. at 52. Mr. Carpanzano is so much more than the person who engaged in the alleged offense conduct. As illustrated in the letters attached as Exhibit "A," Mr. Carpanzano is a loving father, brother and uncle who is dedicated to his family. He is a caring friend.

Mr. Carpanzano, born on December 24, 1958 in Connecticut, is almost 60 years old. He lost his 92 year old mother, Ann Carpanzano, just last year during his incarceration. This was a tremendous heartache for Mr. Carpanzano not being able to attend her funeral. She was fully aware of her son's situation and very supportive. He was especially devoted to his mother. Sal lost his father, Dr. Carmelo Carpanzano, more than 15 years ago.

Sal is the youngest of his siblings. He has one sister and two brothers. He is the closest to his sister, Dr. Carmela Coppola, a neonatologist at University of Pittsburgh Medical

5

Center, Mercy Hospital. All of his siblings are aware of his current situation. They are and remain a closely-knit family and are very supportive.

The individual that now comes before Your Honor to be sentenced is a man with a support group of not only his immediate family, but of friends and community members. The man described in the character letters is dedicated to his family, a loving individual who accepts everyone with open arms and is always ready and eager to lend a helping hand whenever and wherever needed.

After receiving and reviewing the letters we received from friends and family on behalf of Sal, each letter describes the same man, a devoted family man, a loving son, father, brother, and a good guy. After carefully sifting through the letters, we have selected those we believe are most telling and provide for the Court a window into who Sal Carpanzano really is.

Mr. Carpanzano married Rosa Ruvolo in 1986 when he was 28 years old and she was just 22. That marriage ended in divorce over 23 years ago. Although Rosa and Sal's marriage did not work out, they have always maintained a very close relationship with each other based on their devotion to their daughters. Their union produced two daughters, Carmela Carpanzano, now 28 years old and Anna Carpanzano, who is now 23 years old. Both daughters split their time living with each parent but since Sal's arrest and incarceration live in Florida not far from their mother and her husband. She joins her daughters in writing to Your Honor to inform the Court about the good man and good father Sal has been to her and her children. She writes:

> This is a letter from the heart...We are divorced and have been for twenty-three years, but we have always remained a family...Salvatore has always been an inspirational father figure to his girls and still continues to be a strong force in their lives today...I have watched our girls tear at their hearts with so much hurt and pain from the absence of their father

and how much they miss him and want him in their lives.

Rosa Ruvolo's letter is annexed hereto as Exhibit "A," at p. 1.

Carmela Carpanzano, Mr. Carpanzano's first born, writes to the Court to tell you how her father has always protected her and those he loves and made them feel safe and secure. She writes:

> ...Every single woman, from his friends of thirty years, to my younger cousins, and even my Mom after all these years, all told me how safe and secure he always made them feel. Every man I have spoken to, both young and old, have all said the same at one time or another: "He was like a father to me."...The women and men who expressed their love for my Dad, never prefaced their experiences of security and guidance with finances or physical strength...His presence offers far more security than his finances ever could.

Carmela Carpanzano's letter is annexed hereto as Exhibit "A," at pp. 2-3.

Anna Carpanzano, his younger daughter, having now just become a mother less than six months ago to Mr. Carpanzano's one and only grandson, Franco, talks about how much she loves and misses her father. She is anxiously awaiting the day he is released so that he can join their family. He will be living with Anna and her family upon his release from prison. She writes Your Honor:

> ...He's humble, he's kind, and he loves harder than anyone I know...I wait day in and day out for that special phone call from him...Your honor, having my father away this long has left my heart in an empty place...I miss my best friend, I miss appreciating old music, working on cars, and having my biggest support to hug when I'm down.

Anna Carpanzano's letter is annexed hereto as Exhibit "A," at p. 4.

Carmela Coppola, Sal Carpanzano's only sister, a Neonatologist, describes her brother as a giver and as a devoted father who was always there for his daughters. He shows extraordinary compassion and generosity to all those in his life. In her letter to the Court, she states:

> ...He has always been the one to watch over the kids, help them through any crisis, promoting and encouraging them to be the best people possible...He was very close to our mother...She passed away on May 30, 2017 at the age of 92. Sal had to bear this pain alone..Sal has a good heart, he has always meant well. He has helped so many people throughout his life...Reconnecting with family is of the utmost importance to him and will be the fuel to help him make a successful transition.

Carmela Carpanzano's letter is annexed hereto as Exhibit "A" at pp. 5-7.

His niece, Rose Coppola, the daughter of his sister, Carmela, has written Your Honor to tell the Court how Sal stands out as the one person in her life who always showed genuine concern and care for her as an individual, who came to her aid when needed and how she relied on his love and support. She writes:

> ...I love my Uncle Sal...No matter what you love your family. The difference is, my Uncle Sal has always shown me a kind of love I knew to be deeper that just 'relative' love...The difference between my Uncle Sal and everyone else, he truly to the bottom of his heart cares for me and he doesn't have to.

She continues:

> ...In 2013, I attended SUNY Purchase for my first year of college studying theatre and performance...Whenever time allowed, Uncle Sal would come pick me up and we would hang out all weekend.

Rose Coppola's letter is annexed hereto at Exhibit "A" at pp. 8-9.

His immediate family and close friends are all aware of his legal situation and have provided him constant emotional support. A close family friend, Barbara Grimaldi, who met Sal when he was a young teenager sees Sal as another son. She writes:

> ...He was always respectful and kind...One day Sal came to my house and invited me, my daughter and my sister, to go to Boston for a mini vacation with his mother and wife...It was such a beautiful time. He treated all of us like Queens. I have always loved Sal and consider him another one of my sons. My Daughter, Donna, feels the same.

Barbara Grimaldi's letter is annexed hereto as Exhibit "A," at pp. 10-11.

His close friend, Nina Crispino, a dear friend for over 40 years, tells the Court it is an honor to call Sal her friend. She writes to tell the Court how she had always sought out his advice because of his sound judgment. She writes:

> ...Knowing Sal as I do, it is without reservation that I offer you this testimony that speaks to his integrity, kindness, charitable nature, family values, compassion, mentor-ship, reputation, generosity and capacity as role model. Sal has always had sound judgment, fairness and neutrality with whatever situation I have requested his advice. Sal is a family man, we have shared numerous family events with each other and I have been witness to him as a husband, father, son, friend and "Uncle" to my daughter.

Nina Crispino's letter is annexed hereto as Exhibit "A," at p. 12.

Finally, Father Simeone, a close family friend who has known the Carpanzano family for over 35 years, has written a few words to Your Honor about Mr. Carpanzano. He writes:

> ...I have always found Sal to be very respectful and caring person...I was always impressed by Sal's concern for his father and mother and the rest of his

9

> family...This was shown in the way he treated his
> mother and father...I know that he has been a good
> father to his children.

Father Simeone's letter is annexed hereto as Exhibit "A," at p. 13.

These letters written by relatives and friends show a genuine concern for this man. They evidence the man that has always been there for his family, a man who selflessly gives from the heart. Each individual expresses their hope that the Court will see fit to impose a lenient sentence on this defendant who, despite the conduct that led him to this day, is a truly good person who made a mistake and is deeply sorry and remorseful for the situation he is now facing. Each and every letter begs for Your Honor for leniency in sentencing.

## IV. STATEMENT OF THE OFFENSE AND MR. CARPANZANO'S PARTICIPATION

During the period of time from 2004-2010, Salvatore Carpanzano was the sole owner of Medekare Home Health Equipment based in New Jersey. It was a very profitable business with three locations and 10 employees. After his ex-wife terminated all of the employees on one day at the same time, Mr. Carpanzano did not seek to hire new employees but rather just let the business close. With this lucrative business now closed, he went back to doing a job utilizing his skills in what he does best, sales, as a self-employed loan broker for commercial businesses. This was the beginning of the end for Mr. Carpanzano. His actions after the closing of his business led him to where he stands today.

Salvatore Carpanzano cannot justify his actions and he does not seek to do so. He accepts full responsibility for his commission of the crimes to which he pleaded guilty and is very remorseful in having committed them. For this he is truly sorry. Prior to this period, he worked

diligently in his own medical supply company based in New Jersey and his life revolved around his family first and his career second. In every waking minute of his life, his family was always his most important priority.

On December 9, 2015, Mr. Carpanzano pled guilty for his conduct in the instant offense. The PSR calculates his sentencing guidelines to be a level 35. With his acceptance of responsibility, we are at a level 32 which carries a guideline range of 121 - 151 months. The calculation is based upon the total fraud, not just the amount received by Mr. Carpanzano for his fraudulent conduct.

Even where the guidelines are properly calculated, the Court may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. In conducting its review, a district court needs to be mindful of the fact that it is "emphatically clear" that the "Guidelines are guidelines -- that is, they are truly advisory." *See United States v. Cavera*, 550 D.3d 180, (2d Cir.) at 189.

Imposition of sentence by Your Honor on September 12, 2018, will be, in many ways, the end of an ordeal which Mr. Carpanzano and his family have lived through since his arrest and incarceration on November 24, 2014. Since that day they have lived each day with the certain knowledge that he will stand before Your Honor for sentence. We ask that the Court show mercy in sentencing Mr. Carpanzano.

## V. §3553(A) SENTENCING FACTORS IN SALVATORE CARPANZANO'S CASE

### a) Separation from his family

As the Court is aware, Mr. Carpanzano has been separated from his family for 46

months. Both his daughters live in Florida so his visits from them were sparse due to their residing in a distant state, not to mention the financial hardship on these two young women flying or driving to New York for visits. His mother had only one opportunity to visit her son in jail prior to her death last year due to her age and failing health. During his incarceration he has missed out on so much including the birth of his first grandchild just six months ago and the ability to see his mother before her death or to attend her funeral. His daughter has put off her wedding awaiting the release of her father from prison so he can be there to walk her down the aisle.

### b) Mr. Carpanzano's Health

One of the most important factors to consider is the very serious health issues he has endured while incarcerated. He will be 60 years old in December and his health has deteriorated rapidly over the past four years of incarceration. Mr. Carpanzano suffers from Parkinson's Disease, Type 2 diabetes, hypertension, high blood pressure and chronic obstructive pulmonary disease ("COPD"). Due to these conditions, he is currently taking the following medications:

1) Propranolol: Propranolol is a beta-blocker. Beta-blockers affect the heart and circulation (blood flow through arteries and veins). Propranolol is used to treat tremors, angina (chest pain), hypertension (high blood pressure), heart rhythm disorders, and other heart or circulatory conditions;

2) Zoloft: Zoloft is used for treating depression, obsessive-compulsive disorder (OCD), panic disorder, and post-traumatic stress disorder (PTSD). It is also used for treating social anxiety disorder;

3) Metformin: Metformin is used with a proper diet and exercise program and possibly with other medications to control high blood sugar. It is used in patients with type 2 diabetes.

12

Controlling high blood sugar helps prevent kidney damage, blindness, nerve problems, loss of limbs, and sexual function problems.

He also takes insulin injections twice daily and has two types of inhalers. Records from the Westchester County Jail in Valhalla, New York, where Mr. Carpanzano was incarcerated from November 2014 until August 2017 still have not been provided as requested. He was hospitalized several times during his incarceration due to his inability to breathe, the lack of medicine and the conditions of the jail.

Attached hereto as Exhibit "B" are copies of the medical reports from the MDC corroborating Mr. Carpanzano's medications and diagnosis of his current medical conditions. There is also a report citing his continued elevated PSA level with a recommendation that he obtain a prostate biopsy. Mr. Carpanzano is awaiting his release to have that procedure done by his own personal physician.

At a recent visit to the MDC, Mr. Carpanzano showed me a lump that just appeared on his neck and two additional lumps on his body. A fellow inmate, who is a doctor, believes this to be lymphoma but Mr. Carpanzano has not yet seen the doctor for this issue.



[redacted]

It is well within the Court's discretion, under 18 USC §3553(a), to impose a sentence outside the guideline range.

**d)** **Other**

As of his sentencing date, Mr. Carpanzano will have spent 46 months (1,388 days) in pre-trial custody, subject to conditions of confinement which are harsher than those at most federal institutions reserved for post sentence custody. The first 33 months were served at the Valhalla County Jail. For the past 13 months he has been housed in the Metropolitan Detention Center ("MDC"). In addition to the sheer passage of time, the fact that his confinement was in local jails should be taken into consideration as those past four years have been particularly oppressive. The United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972) noted that "[m]ost jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." During the entire almost 4 year period of his incarceration he literally has not seen the light of day.

The MDC has been referred to as "The Worst Prison"[2] with "hellish"[3] conditions and it is commonly understood that the medical treatment leaves much to be desired. Incarceration at the MDC is infinitely more punitive than conventional imprisonment - inmates are often on lock-down 24 hours a day; overcrowding; presumptively innocent pretrial detainees

---

[2] See article entitled, "Pharma Bro Getting Sent To The Worst Prison That He'll Ever Be In", NY Post, September 14, 2017, attached hereto as Exhibit "C." http://nyp.st/2x5zBZu

[3] See *NY Daily News* article entitled, "Jailed Ex-Senator Espada Fumes on 'Hellish' Prison Conditions" attached hereto as Exhibit "D."

14

are housed with sentenced convicts; no access to sunlight; no access to fresh air; access to medical treatment is severely limited; proper nutrition is at best aspirational; educational opportunities are scant. MDC is described as "a place that looks good only when compared to the "supermax" prison in Florence, Colo., or the Marion, Ill., slammer where mob boss John Gotti served time before he died." The deplorable conditions at the federal facility caused Magistrate Judge Cheryl Pollack to refuse to remand a female defendant to the jail due to the "unconscionable" conditions found by a panel of Judges.[4] Judge Pollack stated that "I need to consider the conditions of confinement as part of my judicial responsibility...(and) I'm not the only judge concerned about the conditions at the MDC".

Mr. Carpanzano has accepted his guilt and is truly remorseful for his conduct. Undeniably, he has made countless mistakes in his life but we respectfully submit that this jail time has provided significant punishment to Mr. Carpanzano as well as a powerful deterrent. We therefore submit that Mr. Carpanzano be granted a sentence outside the guideline range.

***

While we tend to allow one's transgressions to overshadow their failures, we respectfully submit that Mr. Carpanzano has demonstrated that he is a man worthy of leniency. While Mr. Carpanzano must be held accountable for his offense conduct, a lenient sentence is warranted since it will be sufficient, but not greater than necessary to achieve the goals of sentencing. See 18 U.S.C.§ 3553(a).

---

[4] See NY Daily News article dated October 13, 2016, entitled, "Judge Rejects Sending Inmate to Brooklyn Jail Until Lousy Conditions are Fixed" attached hereto as Exhibit "E."

## CONCLUSION

For all the foregoing reasons, we respectfully request that the Court exercise its discretion to impose upon Sal Carpanzano a sentence outside the guideline range. He has lost his home and his dignity. All he has left is the support of his loving family who are all awaiting his release and will be there for him as he rebuilds his life. In balancing these various considerations against the person that Salvatore Carpanzano is, and in light of the 3553(a) factors, we respectfully ask that the Court be merciful, as is in the Court's clear discretion, in considering a sentence this matter.

Dated: New York, New York
August 28, 2018

Respectfully submitted,

FISCHETTI & MALGIERI LLP

Ronald P. Fischetti
Attorney for the Defendant
 Salvatore Carpanzano
747 Third Avenue
20th floor
New York, New York  10017
(212) 593-7100